UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

JERRY D. GRAYS,

               PLAINTIFF.                        CIVIL RIGHTS COMPLAINT

        -vs-

ELMIRA CORRECTIONAL FACILITY,

CORRECTIONAL OFFICERS,                         *13*    -cv- *532JR*

MR. D. MCGRAIN,

MR. RONALD MANWARING,                    JURY DEMAND

MR. JOHN DOE #2,

MR. H. MCALINN,(HENCE HERE FORWARD MR. MCA.),

MR. JOHN DOE #3,

MR. JOHN DOE #4,

MISS JANE DOE,

DR. BRASALMANN, MEDICAL PROVIDER,



                                DEFENDANTS.

            PLAINTIFF, JERRY D. GRAYS, AS AND FOR HIS COMPLAINT
AGAINST THE DEFENDANTS ALLEGES THE FOLLOWING:

### STATEMENT OF JURISDICTION

    1.     This is a Civil Action seeking relief and/or damages
to defend and protect the rights guaranteed by the Constitution
of the United States. This action is brought Pursuant to 42 U.S.C.
$$1983. The court has jurisdiction over the action pursuant to 28
U.S.C. $$1331, 1343(3) and (4), and 2201.

                             1.

## PARTIES TO THE ACTION

2.      Plaintiff, JERRY D. GRAYS, is a diciliary of the State of New York. He is presently incarcerated in the New York State Department of Correctional Services, at the Clinton Correctional Facility, P.O. Box 2002, Dannemora, New York 12929; and, at all times relevent to this complaint, was incarcerated in the New York State Department of Correctional Services, and is a Citizen of the United States of America.

3.      Defendant, MR. D. MCGRAIN,  functions as a CORRECTIONAL OFFICER (HENCE HERE FORTH-C.O.), at the Elmira Correctional Facility located at P.O. Box 500, Elmira, New York 14902-0500.

4.      Upon information and belief, MR. D. MCGRAIN,  in his individual capacity is a C.O. His duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

5.      In furtherance, MR. D. MCGRAIN, makes decisions which consist of following NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES (HENCE HERE FORTH-N.Y.S.D.O.C.S.); proceedures; rules and regulations.

6.      Defendant, MR. RONALD MANWARING      , functions as a C.O. at the Elmira Correctional Facility located at P.O. Box 500, Elmira, New York 14902-0500.

7.      Upon information and belief, MR. RONALD MANWARING, in his individual capacity is a Correctional Officer. His duties

2.

consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

8.     In furtherance, **MR. RONALD MANWARING**    , makes decisions which consist of following **N.Y.S.D.O.C.S.** proceedures; rules and regulations.

9.     Defendant, **MR. JOHN DOE #2,** functions as a C.O. at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

10.    Upon information and belief, **MR. JOHN DOE #2,** in his individual capacity is a C.O. His duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

11.    In furtherance, **MR JOHN DOE #2,** makes decisions which consist of following **N.Y.S.D.O.C.S.** proceedures; rules and regulations.

12.    Defendant, **MR. MCA;** functions as a C.O. at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

13.    Upon information and belief, **MR. MCA;** in his individual capacity is a C.O. His duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

14. In furtherance, MR. MCA; makes decisions which consist of following N.Y.S.D.O.C.S. proceedures; rules and regulations.

15. Defendant, MR. JOHN DOE #3, functions as a C.O. at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

16. Upon information and belief, MR. JOHN DOE #3, in his individual capacity is a C.O. His duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

17. In furtherance, MR. JOHN DOE #3, makes decisions which consist of following N.Y.S.D.O.C.S. proceedures; rules and regulations.

18. Defendant, MR. JOHN DOE #4, functions as a C.O. at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

19. Upon information and belief, MR. JOHN DOE #4, in his individual capacity is a C.O. His duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

20. In furtherance, MR. JOHN DOE #4, makes decisions which consist of following N.Y.S.D.O.C.S. proceedures; rules and regulations.

4.

21.     Defendant, **MISS JANE DOE**, functions as a C.O. at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

22.     Upon information and belief, **MISS JANE DOE**, in her individual capacity is a **C.O.** Her duties consist of overseeing the safety and security of the Elmira Correctional Facility, which include but are not limited to making rounds (counts), escorting Offenders to and from meals, ensuring Offenders safety and security.

23.     In furtherance, **MISS JANE DOE**, makes decisions which consist of following **N.Y.S.D.O.C.S.** proceedures; rules and regulations.

24.     Defendant, **DR. BRASALMANN**, functions as a Medical Provider at the Elmira Correctional Facility, located at P.O. Box 500, Elmira, New York 14902-0500.

25.     Upon information and belief, **DR. BRASALMANN**, in his individual capacity is a Licensed Medical Provider and in his Official capacity is a Medical Provider at the Elmira Correctional Facility.

26.     In furtherance, **DR. BRASALMANN'S**, duties include maintaining **AMBULATORY HEALTH RECORDS (HENCE HERE FORTH-A.H.R.)**, and to ensure that appropriate medical protocal is followed in accordance with medical standards; including but not limited to follow-up care, referrals for medical treatment and/or testing and on the spot emergency medical care.

## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

27.     Plaintiff, **JERRY D. GRAYS**, does not have any lawsuits pending in the State or Federal Courts.

## AS AND FOR PLAINTIFF'S CAUSE OF ACTION

28.    The Plaintiff commences this Civil Rights Action against Defendants; MR. D. MCGRAIN, MR. RONALD MANWARING   , MR. JOHN DOE #2, MR. MCA; MR. JOHN DOE #3, MR. JOHN DOE #4, MISS JANE DOE, AND DR. BRASALMANN, whereas Plaintiff's Constitutional Rights were repeatedly violated, regarding medical needs, cruel and unusual punishment, as the Defendants failed to protect the Plaintiff's Constitutional Rights, while under the supervision of each of the Defendants' care and custody.

29.    On 8/9/11 Plaintiff arrived at the Elmira Correctional Facility to start his reception period. He was placed in A-BLOCK, 4-GALLERY, 8-CELL.

30.    On 8/30/11 at 11pm lights went out (NORMAL PROCEEDURE) at APPROXIMATELY (HENCE HERE FORTH-APP.) 11:30pm, MR. D. MCGRAIN was doing his rounds, he saw Plaintiff sitting at his cell gate, at that time MR. D. MCGRAIN  left. Moments later he came to Plaintiff's cell with a large garbage can full of cold water (on a hand cart), MR. D. MCGRAIN  proceeded to throw several gallons of COLD water on Plaintiff and his personal property, including but not limited to his clothing, bedding, legal paper work and medications. When he was done with this water assualt, he said "IF YOU COME TO CHOW IN THE MORNING I'M GOING TO PUMMEL YOUR FAT ASS". Plaintiff sat freezing the rest of the night in soaking wet cloths.

31.    On 8/31/11 at APP. 6:30-7am, A-BLOCK, 4-GALLERY cells opened for "MANDATORY CHOW". Plaintiff noticed MR.  D. MCGRAIN along with 10-15 other C.O.s waiting down by the B-BLOCK gate.

32.     As Plaintiff, along with the rest of 4- GALLERY (APP.
45) OFFENDERS proceeded to chow, Plaintiff was confronted by MR.
D. MCGRAIN , whom assualted Plaintiff by repeatedly slapping his
face and emphasizing "I TOLD YOU NOT TO COME TO CHOW TODAY" while
all his co-workers stood by and watched. Among the onlookers was
MR. RONALD MANWARING     , MR. JOHN DOE #2, and MR. H. MCALINN.

33.     This was followed by MR. D. MCGRAIN  grabbing the
Plaintiff's collar and slamming him against the wall. One of the
other C.O.s then told MR. D. MCGRAIN , "TAKE HIM TO THE FLOOR".
At that time the Plaintiff was SLAMMED to the concrete floor.

34.     Upon hitting the floor TWO other C.O.s commenced to
brutally assualt Plaintiff, as MR. RONALD MANWARING    , kicked
him repeatedly in his back, MR. JOHN DOE #2 kicked him in the
right side of his abdomen and right leg. This assualt lasted
several minutes while MR. D. MCGRAIN  continued slapping and
verbally assualting the Plaintiff.

35.     When Plaintiff was finally told to get up and get to
chow, as he stood up he felt a severe pain in his right knee and
noticed from the knee down his pant leg was saturated with blood,
as he pulled up his pant leg a large gash was revealed just below
his knee cap.

36.     As Plaintiff's assailants noticed the excessive amount
of blood, he was ordered to go back to his cell, not chow, he
complied to the direct order, painfully.

37.     APP. 8:15am as MR. MCA. made his normal rounds,
Plaintiff informed him of his need for medical attention. MR.
MCA. told Plaintiff he was not going to recieve any medical

attention. At this time Plaintiff asked to see a SERGEANT (HENCE HERE FORTH-SGT.) and to get a grievance form. MR. MCA. stated "IF YOU ASK AGAIN YOU WILL GO TO KEEPLOCK AND/OR RECIEVE A WORSE BEATING THAN YOU ALREADY GOT!"

38.     Plaintiff sat in his cell all day until the next shift change with his leg bleeding profussely and in great pain.

39.     APP. 3pm, shift change, as 4-GALLERY C.O. did his rounds, Plaintiff stopped him at his cell, he informed the C.O. he needed to see a Medical Provider as he showed the C.O. the gash on his leg. After a brief discussion the C.O. informed him that he would get him to medical in a few minutes.

40.     APP. 4pm. Plaintiff's cell gate opened, as he peered out, he was motioned to the forward part of the gallery by MR. JOHN DOE #3, Plaintiff painfully limped to the forward part of the gallery, where MR. JOHN DOE #3 asked "WHAT HAPPENED?", as Plaintiff started explaining what had happened, MR. JOHN DOE #3, said "THAT'S NOT WHAT HAPPENED, YOU FELL IN YOUR CELL" Plaintiff tried to explain to MR. JOHN DOE #3 that, that was not what happened, he had been assualted by several C.O.s, MR. JOHN DOE #3 said "THE ONLY WAY YOU ARE GOING TO MEDICAL IS IF YOU UNDERSTAND WHAT I AM TELLING YOU, YOU FELL IN YOUR CELL, IF I HEAR YOU TOLD THEM ANYTHING DIFFERENT YOUR OTHER LEG WILL LOOK WORSE TOMMORROW".

41.     MR. JOHN DOE #3 asked what the Plaintiff was incarcerated for, Plaintiff informed him that he was incarcerated on a conspiracy in the second charge. MR. JOHN DOE #3 stated he would talk to the C.O.s whom assualted the Plaintiff and ensure it does not happen again. Before MR. JOHN DOE #3 sent him to medical, he

8.

asked if the PLaintiff understood the **"STORY"** and if he did not have intentions of telling the **"LIE"** he would not be taken to medical. Plaintiff agreed to tell the **"STORY"** to get the medical attention his injuries required.

42. At this time Plaintiff was forced to walk to **B-BLOCK** where **MR. JOHN DOE #4** was waiting to escort Plaintiff (made to walk) to the infirmary. When Plaintiff and **MR. JOHN DOE #4** arrived at the infirmary, the **C.O.**s assigned to the infirmary, **MISS JANE DOE** and a male C.O. asked Plaintiff **"WHAT HAPPENED"**, before he could responde to them **MR. JOHN DOE #4**, told them he fell in his cell.

43. Plaintiff was told to sit on a bench in the hall, he sat there **APP. A HALF AN HOUR** waiting to see a Medical Provider. while sitting there waiting a Porter (Offender) approached and asked **"WHAT HAPPENED"**. Plaintiff told him of his assualt by **C.O.s**, **MISS JANE DOE** told Plaintiff to watch his mouth stating **"COMMENTS LIKE THAT CAN GET YOU HURT OR KILLED AROUND HERE"**.

44. At 5pm Plaintiff was seen by **RN. KATHY TALADA**, who asked **"WHAT HAPPENED"**, **MR. JOHN DOE #4** told her Plaintiff fell in his cell. **RN. TALADA** questioned his response and was again told by **MR. JOHN DOE #4** that Plaintiff had fallen in his cell.

45. **RN. TALADA** asked **MR. JOHN DOE #4** to go get her some--thing, when **MR. JOHN DOE #4** left the room she asked Plaintiff **"WHAT REALLY HAPPENED?"**, when Plaintiff explained the assualt to her, she informed him that she had to report the assualt. **RN. TALADA** notified a SGT. and asked him to report to the infirmary.

46. **MR. JOHN DOE #4** was talking to the SGT. outside

9.

Plaintiff's room, Plaintiff heard MR. JOHN DOE #4 mention "PEE-PEE TOUCHER"(SEX OFFENDER).

47.    When said SGT. came into the room Plaintiff asked "YOU WEREN'T TALKING ABOUT ME, WERE YOU?", SGT. said "NO WHY?" Plaintiff responded, saying "THAT'S NOT WHY I'M HERE, I AM HERE FOR CONSPIRACY TO COMMIT MURDER", SGT. stated he would be back in a few minutes and left the room.

48.    When the SGT. returned, he stated "YOU DID NOT LIE TO ME, I JUST LOOKED YOU UP ON THE COMPUTER AND YOU ARE HERE ON A CONSPIRACY CHARGE, YOU DON'T HAVE A SEX CHARGE ANYWHERE ON YOUR RECORD, APPARENTLY THE C.O. WHO STARTED THIS ASSUALT THOUGHT YOU WERE A SEX OFFENDER, I WILL TALK TO HIM AND TELL HIM THE TRUTH AND MAKE SURE THIS DOESN'T HAPPEN AGAIN".

49.    SGT. asked Plaintiff to tell him the REAL STORY about the assualt, Plaintiff explained the whole situation while RN. TALADA cleaned and bandaged the injury. At this time the SGT. took photos of the injuries.

50.    At this time the SGT. asked "WHAT DO YOU WANT TO DO?", Plaintiff informed the SGT; "I WANT TO FILE A COMPLAINT AND FORMAL CRIMINAL CHARGES". Plaintiff also informed the SGT. that he feared for his life and safety. SGT. said "I FEEL IT WOULD BE BEST IF YOU GO ALONG WITH THE STORY TO KEEP YOU SAFE FOR NOW".

51.    Plaintiff informed the SGT. he intended on sueing the C.O.s involved, also he informed the SGT. he had full intentions of writing GOVERNOR ANDREW CUOMO, COMMISSIONER OF CORRECTIONS BRIAN FISCHER and the INSPECTOR GENERAL.

52.     SGT. said he would put the Plaintiff in the infirmary to protect him, RN. TALADA at this time informed the Plaintiff, he was being sent to an outside hospital to get medical treatment i.e. staples or stitches.

53.     At this time MISS JANE DOE along with another C.O. took Plaintiff in an elevator down to the holding area to await his transport to the outside hospital, while in the elevator MISS JANE DOE told the other C.O. about the Plaintiff telling the porter (SEE PARAGRAGH #43) about the assualt, MISS JANE DOE and the other C.O. both threatened the Plaintiff, MISS JANE DOE said "YOU MUST NOT WANT TO GET OUT OF HERE ALIVE, KEEP YOUR MOUTH SHUT".

54.     APP. 5:30pm Plaintiff was placed in a holding cell, awaiting transport to an outside hospital.

55.     APP. 6pm Plaintiff was taken back up to the infirmary and placed in a room for the night, without ever going to an outside hospital.

56.     A.H.R. dated 8/31/11, time 5pm, RN. TALADA spoke to DR. BRASALMAN, at 5:50pm, DR. stated he will take care of injury in the AM (9/1/11).

57.     9/1/11 at 2pm, Plaintiff was taken to an exam room where DR. BRASALMAN and RN. TALADA examined Plaintiff's injury, DR. BRASALMAN asked "WHAT HAPPENED?" When Plaintiff explained that he had been assualted by C.O.s, DR. BRASALMAN stated he MUST report the incident and he notified a SGT. who came to interview Plaintiff (SECOND SGT. TO INTERVIEW PLAINTIFF REGARDING THIS ASSUALT).

58.     When DR. BRASALMAN looked at the Plaintiff's right knee (injured knee) he asked "WHEN DID THIS HAPPEN?", he went on to

11.

say "THIS IS NOT A FRESH WOUND, I CAN TELL IT IS ATLEAST A DAY OLD". Plaintiff told him it had accured the previous morning. DR. BRASA-LMANN asked why the injury had not been taken care of the previous day. Plaintiff explained to him that he had been refused medical treatment for over 8 hours.

59.    RN. TALADA explained to the DR. that Plaintiff was the person she had spoke to him about the night prior and that he (DR. BRASALMANN) had made the decision to not send Plaintiff to an outside hospital (8/31/11).

60.    DR. BRASALMANN stated "THIS WOUND COULD EASILY GET INFECTED DO TO LACK OF TREATMENT", SEE EXPECTED OUTCOME/INTER-VENTION, STATES POTENTIAL FOR INFECTION·

61.    A.H.R. DATED 9/1/11 2PM DR. BRASALMANN PUT 11 STAPLES IN RIGHT KNEE. PLAINTIFF GIVEN KNEE SLEEVE (BRACE) TO KEEP KNEE IMMOBLE.

62.    INMATE INJURY REPORT 8/31/11 5PM STATES 3" LACERATION X 1/2" LACERATION. A.H.R. 9/1/11 2PM, AFTER STAPLES DONE, RETURNED TO INFIRMARY, (FOR PROTECTIVE CUSTODY AND TO ALLOW INJURY TIME TO HEAL BEFORE RETURNING TO POPULATION).

63.    Between 3-5pm, Plaintiff asked MISS JANE DOE for a GREIVANCE FORM. MISS JANE DOE refused to provide a GREIVANCE FORM to the Plaintiff. Plaintiff wrote his GREIVANCE on lined paper and handed it to MISS JANE DOE on her next round.

64.    PROGRESS NOTES 9/2/11, 11AM "WILL ADMIT PATIENT TO INFIRMARY AFTER WEEKEND", ALREADY IN INFIRMARY SINCE 8/31/11, SEE INFIRMARY 24 HOUR ADMISSION & OBSERVATION SHORT FORM 8/31/11, 1750 HRS.

65.     On 9/2/11 at 11:40am PROGRESS NOTES state "ENTIRE KNEE (RIGHT) BRUISED; STILL BLEEDING, TOLD NOT TO BEND KNEE.

66.     Plaintiff was seen by third (different) SGT. on 9/2/11 during the 7-3 SHIFT, MORNING, SGT. stated "THE MATTER HAS BEEN RESOLVED WITH THE OFFICERS, YOU DON'T HAVE TO WORRY ABOUT ANY MORE PROBLEMS".

67.     On 9/2/11, BETWEEN 3-4pm when MISS JANE DOE did her normal rounds she brought back Plaintiff's greivance, signed by her, stating "YOUR COMPLAINT WAS UNFOUNDED ON THE GROUNDS THERE IS NO PROOF". Plaintiff signed greivance stating PLAINTIFF DID NOT EXCEPT HER RESPONSE AND WANTED TO SEND GREIVANCE ON TO THE NEXT LEVEL. PLAINTIFF HAS NOT SEEN GREIVANCE SINCE THAT TIME.

68.     PLAINTIFF F.O.I.L. REQUESTED ELMIRA I.G.P. ON 11/29/12, F.O.I.L. OFFICE RESPONSE "PER MR. ABRUNZO THERE ARE NO GREIVANCES ON FILE". ON 12/5/12, SENT F.O.I.L. REQUEST TO CLINTON ANNEX I.G. P. REQUESTING A COPY OF SAID GREIVANCE, ON 12/6/12 RESPONSE FROM T. BROUSSEAU, I.G.P. SUPERVISOR, STATES MUST F.O.I.L. ELMIRA FOR COPY OF GREIVANCE, ALREADY DONE.

69.     Plaintiff wrote to GOVERNOR ANDREW CUOMO, COMMISSIONER OF CORRECTIONS BRIAN FISCHER  and the INSPECTOR GENERAL'S OFFICE on .9/20/11  Plaintiff put these hand written letters in the U.S. POSTAL BOX provided for Offenders.

70.     On 9/4-5/11 at APP. 12-1AM, NURSE--(WIFE OF C.O. RONALD **MANWARING**   ) entered Plaintiff's room with a C.O; NURSE

     asked to see Plaintiff's knee (THIS WAS A COVER UP FOR THE HARRASSMENT THAT FOLLOWED, NURSE                 NEVER ACTUALLY LOOKED AT PLAINTIFF'S KNEE), she proceeded to lecture (yell) at the Plaintiff about her husband's integrity and how decent a man

13.

he is and about his 20 some years of dedicated service to the
State of New York.

71.    On 9/6/11 Plaintiff was discharged from the infirmary
and sent back to his cell location, A-BLOCK, 4-GALLERY, 8-CELL.
INPATIENT DISCHARGE INSTRUCTION dated 9/6/11 state IF ANY SIGNS
OF INFECTION PUT IN SICK CALL SLIP. A.H.R. 9/6/11, 1PM VERIFIES
SAME INFORMATION. When Plaintiff returned to his cell it had been
ramsacked, Other Offenders verified that C.O.s had been in Plain-
tiff's cell.

72.    9/7/11 Plaintiff's knee swelled up he had a great
amount of difficulty bending his knee, he submitted a sick call
slip.

73.    A.H.R. dated 9/8/11 PLAINTIFF PUT ON KEFLEX 500mg
(ANTIBIOTIC) FOR INFECTION IN THE RIGHT KNEE.

73.    Mid to late September a CAPTAIN OR LIEUTENANT (can't
remember which) came to Plaintiff's cell to question him due to
the I.G.'s inquiries, he told Plaintiff he was lying. Plaintiff's
neighbor, TRAVIS CORNELL, (CELL #7) was a witness to the assualt
on 8/31/11, the CAPTAIN or LIEUTENANT told him he didn't want to
get involved and didn't want to help a piece of crap like the
Plaintiff. Said Officer asked Plaintiff what he wanted to do.
Plaintiff informed him that he wanted to press criminal charges
and to have appropriate action taken against his assailants,
Officer stated he would forward the information to the I.G.'s
OFFICE , including a list of witnesses.

74.    On OCTOBER 1,2011 at APP. 1-2AM, Plaintiff's cell
gate opened, two C.O.s escorted Plaintiff to the end of the
gallery where a SGT. was waiting to question him about incident.

14.

Plaintiff explained to said SGT. that he had already explained his story to 3 SGT.s and a CAPTAIN or a LIEUTENANT. SGT. said it didn't matter, incident happened on his shift, on his block so he wanted to hear the story. After the Plaintiff told the SGT. his story, said SGT. told him he was lying and had Plaintiff put back in his cell after a few small threats to drop the issue.

75.     APP. 10-20 minutes later, RICHARD SAID, a witness to the assualt on 8/31/11 (A-BLOCK, 3-GALLERY, 39-CELL) was escorted out of his cell to the end of the gallery in his boxer shorts and a tee shirt (no shoes), where the same SGT. who had questioned Plaintiff just moments earlier was waiting to question RICHARD SAID about said assualt. SGT. told him he did not want to get involved, MR. SAID told the SGT. he did not fear his threats and he was going to stand up for what was right, SGT. had MR. SAID returned to his cell.

76.     10/2/11 APP. 10-11am Plaintiff was told to pack up his property, he was on the draft to be moved to another facility. When Plaintiff got to the draft room he was told by a C.O. that they (draft officers) were extremely busy and they would put security tags/seals on his bags later, (normal proceedure is to seal bags while Offender is present to ensure they are not tampered with). Plaintiff complied and left draft bags open.

77.     10/3/11, AM Plaintiff left ELmira headed to Clinton Correctional Facility Annex, he spent the night of 10/3/11 at Down State Correctional Facility.

78.     10/4/11, ARRIVED AT CLINTON CORRECTIONAL FACILITY ANNEX, LOCATED AT P.O. BOX 2002, DANNEMORA, NEW YORK 12929 IN THE EVENING AND WAS PLACED IN 14 BUILDING.

79.    10/5/11, 8-12am Plaintiff recieved his property bags
(draft bags), as he unpacked his property bags he discovered that
his file with all his records from the incident that had accured
on 8/31/11 at the Elmira Correctional Facility was gone. Said file
Possessed DATES, TIMES, 'NAMES' OF C.O.S, NURSES, SGT.S DR.S and
the NAMES OF SEVERAL WITNESSES, ALSO A FULL CRONOLOGICAL TIME
LINE OF EVENTS, AND MORE.

80.    The seals that were on Plaintiff's draft bags were to
the best of his knowledge the same ones that were on his bags when
he left Elmira, therefore Plaintiff feels this file had to be
removed in Elmira, as nothing else was missing from his property
bags.

81.    10/9/11 Plaintiff recieved a letter from KENNETH DECKER,
ACTING DEPUTY COMMISSIONER OF CORRECTIONS stating that GOVERNOR
ANDREW CUOMO and COMMISSIONER BRIAN FISCHER asked him to respond
to his LETTERS regarding the alleging staff misconduct at Elmira
CORRECTIONAL FACILITY, Letter also stated that the DEPARTMENTS
INSPECTOR GENERAL'S OFFICE has an open investigation at this time.

82.    10/13/11, INVESTIGATOR LONERGAN, from the INSPECTOR
GENERAL'S OFFICE came to Clinton Correctional Facility Annex to
interview Plaintiff regarding assualt that occured on 8/31/11
at the Elmira Correctional Facility. Said investigator told
Plaintiff when he left, he would be in touch and let Plaintiff
know what his investigation turns up.

83.    11/29/12 Plaintiff sent F.O.I.L. REQUEST TO THE I.G.'S
OFFICE FOR A FULL INVESTIGATION FILE AS HE HAD NEVER HEARD BACK
FROM THEIR OFFICE AFTER INITIAL INTERVIEW, on OCTOBER 13,2011.

16.

## PLAINTIFF'S CONCLUSION

84.     In summary the Plaintiff should not have endured the pain and suffering, which stemmed from the cruel and unusual punishment, nor, the deliberate indifference to his medical needs, which all stemmed from a violation of his 14th Amendment Right to not be discriminated against, as Plaintiff feels he was discriminated against as assualt occured due to the fact that MR. D. MC-GRAIN assumed Plaintiff was a Sex Offender.

85.     The Plaintiff's Constitutional Rights were violated repeatedly , while he was in the care and custody of the Defenants.

86.     The Constitutional basis for this claim under 42 U.S.C. $$ 1983 is: The Defendants' actions of cruel and unusual punishment, and that of deliberate indifferance, violate Plaintiff's 8th and 14th Amendment's Constitutional Rights.

87.     The relief Plaintiff is seeking for this claim is: Monitary Damages; for the cruel and unusual punishment that Plaintiff endured at the hands of the Defendants, and for Plaintiff's conscious pain and suffering, for the duration of time it took the Plaintiff to have his medical needs met.

## EXHAUSTION OF PLAINTIFF'S ADMINISTRATIVE REMEDIES FOR THIS CLAIM

88.     Plaintiff filed a GRIEVANCE which was never answered, he contacted the Office of the INSPECTOR GENERAL, COMMISSIONER OF CORRECTIONS, BRIAN FISCHER, and GOVERNOR ANDREW CUOMO regarding this assualt, which is EXHAUSTION OF ADMINISTRATIVE REMEDIES for this claim to there fullest extent possable.

89.    Verifying Plaintiff's exhaustion of ADMINISTRATIVE REMEDIES to the fullest extent, as a result of my grievance not being answered at the Facility level, Plaintiff notified the INSPECTOR GENERAL'S OFFICE of this assualt. Plaintiff filed a F.O.I.L: to the INMATE GRIEVANCE RESOLUTION COMMITTEE, both ELMIRA and CLINTON ANNEX CORRECTIONAL FACILITIES, BOTH responded NO GRIEVANCE FOUND. SEE ATTACHMENTS 2-A, 2-A1, 2-B, 2-B1 and 0-A.

## RELIEF SOUGHT

90.    Plaintiff; JERRY D. GRAYS, demands judgement against Defendants, MR. D. MCGRAIN,  MR. RONALD MANWARING    , MR. JOHN DOE #2, MR. MCA;  MR. JOHN DOE #3, MR. JOHN DOE #4, MISS. JANE DOE and DR. BRASALMANN, jointly and severally for compensatory damages in the amount of $8,000,000.00 plus interest and further demand judgement against each Defendant, jointly and severally for punitive damages in the amount of $2,000,000.00 plus cost of this Action and such other relief as the Court deems just and equitable.


WHEREFORE, PLAINTIFF DEMANDS JUDGEMENT AGAINST DEFENDANTS AS FOLLOWS:

(A)    DEFENDANT,

MR. D. MCGRAIN , IN THE AMOUNT OF $1,000,000.00 PLUS INTEREST,

(B)    DEFENDANT,

MR. RONALD MANWARING    , IN THE AMOUNT OF $1,000,000.00 PLUS INTEREST,

18.

(C)   DEFENDANT,

MR. JOHN DOE #2, IN THE AMOUNT OF $1,000,000.00
PLUS INTEREST,

(D)   DEFENDANT,

MR. H. MCALINN, IN THE AMOUNT OF $1,000,000.00
PLUS INTEREST,

(E)   DEFENDANT,

MR. JOHN DOE #3, IN THE AMOUNT OF $1,000,000.00
PLUS INTEREST,

(F)   DEFENDANT,

MR. JOHN DOE #4, IN THE AMOUNT OF $1,000,000.00
PLUS INTEREST,

(G)   DEFENDANT,

MISS. JANE DOE, IN THE AMOUNT OF $1,000,000.00
PLUS INTEREST,

(H)   DEFENDANT,

DR. BRASALMANN, IN THE AMOUNT OF $1,000,000,00.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS
TRUE AND CORRECT.


EXECUTED ON  May 8 , 2013.


SWORN TO BEFORE ME THIS
8th DAY OF May ,2013.
_Jamie Lee Phillips_
NOTARY PUBLIC

_Jerry D. Grays_
JERRY D. GRAYS

DIN # 11-B-2432

19.

JAMIE LEE PHILLIPS
Notary Public State of New York
No. 01PH6256426
Qualified in Clinton County
Commission Expire 02/27/20 16

1-A

JERRY D. GRAYS DIN #11B2432
CLINTON CORRECTIONAL FACILITY ANNEX
P.O. BOX 2002
DANNEMORA, NY 12929

NOVEMBER 29, 2012

I.G.P. SUPERVISOR
ELMIRA CORRECTIONAL FACILITY
P.O. BOX 500
ELMIRA, NY 14902-0500

I.G.P. SUPERVISOR,

     Pursuant to Artical Six(6), Section 89, Subd.3, as
amended, of the Public Officers Law, upon reciept of this
written request, (F.O.I.L.) kindly provide or make available
to me the following;

     1)   Any and all copies of my grievence filed at
          the Elmira Correctional Facility in the month
          of September 2011 or thereafter.

     2)   Any and all copies of exhibits filed under said
          grievance.

     3)   Any and all copies of investigation reports
          filed under said grievance.

     Please be advised I am the grievant of said grievance
(dated the first week of September 2011 or thereafter.
The reason for my request is due to the fact that I have
misplaced my records of such.

     Enclosed is a dispursement for all copies of request.

     I thank you for your time and consideration in this
matter, as I await your timely response.

                                   RESPECTFULLY,

                                   Jerry J. Grays

SWORN TO BEFORE ME THIS
                                   JERRY D. GRAYS
29th DAY OF November 2012          DIN #11B2432

Jamie Lee Phillips

NOTARY PUBLIC

JAMIE LEE PHILLIPS
Notary Public State of New York
No. 01PH6256426
Qualified in Clinton County
Commission Expire 02/27/20 _____

CC: JDG FILE

2-A1

## STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES
### ELMIRA CORRECTIONAL AND RECEPTION CENTER

### FOIL OFFICE

**TO:** J. Grays  11B2432

**FROM:** D. Kobbe, FOIL Officer

**RE: YOUR RECENT FOIL REQUEST**

**DATE:** 12/3/12

___ This memorandum will acknowledge receipt of your memo/request on ___12/3/12___.

___ As soon as this information is available from the office that retains it, you will be notified of the cost of copying.

___ Your request to review your _____ has been forwarded to your counselor.

___ You must address your FOIL request to:
  ___ Medical, pursuant to HIPPA.
  ___ Parole.      They handle their own FOIL requests.
  ___ Mental Health.  They handle their own FOIL requests.

___ The document(s) / tape(s) you requested consist of _____. The cost of copying is $.25 per page, $1.00 per tape. Upon receipt of your verified disbursement form/check in the amount of _____, the records requested will be forwarded to you after the money has been deducted from your account. ***Please make sure you disbursement is signed by you and the source area before forwarding.***

___ Your disbursement has been forwarded to Inmate Accounts for processing. Upon receipt of the yellow copy confirming deduction, I will forward your copies.

__X__ Your request is denied for the following reason(s):
  _X_ Records do not exist in our files
  ___ Records are evaluative/confidential in nature and exempt from disclosure.
  ___ Other: _____

___ Be more specific _____

___ This is not a FOIL request, contact _____

___ Your document(s) are attached and your FOIL request is complete.

__X__ Other: Per Mr. Abrunzo, there are no Grievances on file.

You have the right to appeal any FOIL decision by writing the Office Of Counsel, NYS Department Of Correctional Services, State Office Bldg #2, 1120 Washington Street, Albany, NY 12226. Include your name, DIN, current facility, date and location of your original request, the records you are requesting and have been denied; and state the reasons given for the denial.

,White - Requester      Yellow - FOIL Office

2-ß

JERRY D. GRAYS DIN #11-B-2432
LOC: 6-2-13

DECEMBER 5,2012

I.G.P. SUPERVISOR
CLINTON CORRECTIONAL FACILITY ANNEX

RE: GREIVANCE FILED IN SEPTEMBER 2011 AT ELMIRA CORRECTIONAL FACILITY:

I.G.P. SUPERVISOR,

Pursuant to Artical Six(6), Section 89, Subd.3,
as amended of the Public Officers Law, upon reciept of this written
request, (F.O.I.L.) kindly provide or make available to me the
following:

1)   Any and all copies of my greivance filed at the
     Elmira Correctional Facility in the month of September
     2011 or thereafter.

2)   Any and all copies of exhibits filed under said
     greivance.

3)   any and all copies of investigation reports filed
     under said greivance.

4)   Status of said greivance at this time.

Please be advised I am the greivant of said
greivance dated the first week of September 2011 or thereafter.
The reason for my request is due to the fact that I have misplced
my records of such.

I thank you for your time and consideration in
this matter, as I await your timely response.

RESPECTFULLY,

JERRY D. GRAYS

DIN #11-B-2432

CC: JDG FILE

2-B1

STATE OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
# CLINTON ANNEX CORRECTIONAL FACILITY

### INMATE GRIEVANCE PROGRAM

**TO:**        GRAYS, J 1 (13-432 A-2-13)

**FROM:**    T. BROUSSEAU, IGP SUPERVISOR

**DATE:**    12/6/12

**SUBJECT:**   RECENT COMMUNICATION DATED 12/5/12

In your recent communication you requested copies of grievances filed at Elmira C.F.
You are advised that you must submit a FOIL request to the FOIL officer at Elmira C.F. to
request these records. Grievance records are maintained at the facility where they are filed.

cc.      file

0-A

   I ALSO HAVE COPIES OF THE ORIGINAL LETTERS SENT TO THE
INSPECTOR GENARAL'S OFFICE AND GOVERNOR CUOMO'S OFFICE DATED
SEPTEMBER 20,2011. SAID LETTER'S BOTH STATE I (PLAINTIFF) ATTEMPTED
TO GET A GRIEVANCE FORM ON AUGUST 31,2011, AND WAS DENIED ONE.
THESE LETTER'S ALSO PROVED THAT DUE TO THE FACT THAT I WAS DENIED
A GRIEVANCE FORM I STILL EXHAUSTED MY ADMINISTRATIVE REMEDIES
BY GOING TO THE NEXT LEVEL OF ADMINISTRATION IN THE NEW YORK
STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION.

 AT THIS SAME TIME (SEPTEMBER 20,2011) I ALSO WROTE TO
COMMISSIONER OF CORRECTIONS, FISCHER, I HAVE NOT BEEN ABLE TO
OBTAIN A COPY OF THAT ORIGINAL LETTER AS OF YET.

VERIFICATION

STATE OF NEW YORK )
COUNTY OF CLINTON ) ss.:
CITY OF DANNEMORA )


    **JERRY D. GRAYS DIN #11B2432**_____, being duly sworn, deposes and says that:  " I am the Deponent and litigant in the instant proceeding, and have read the foregoing documents, and all other papers submitted by me, and in my behalf, and know the contents therein; that the same is true and accurate to the best of my knowledge and belief, except as to those matters cited as based upon " information and belief", and, as to those matters, I believe them to be true, based upon what is presently known and understood by me, as true and accurate."

Dated: **MAY    8**____,20 **13**__

At:  Dannemora, New York


Sworn to before me this

__8th__ day of __May_____ 2013


_Jamie Lee Phillips_
NOTARY PUBLIC

_Jerry J. Grays_
JERRY D. GRAYS DIN #11B2432
CLINTON CORRECTIONAL FACILIY
P.O. BOX 2002, DANNEMORA, N.Y.
             12929

**JAMIE LEE PHILLIPS**
**Notary Public State of New York**
**No. 01PH6256426**
**Qualified in Clinton County**
**Commission Expire 02/27/20 16**