UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JERRY GRAYS, 11-b-2432,

                                   Plaintiff,                13-CV-532-EAW-HKS

v.

MR. D. McGRAIN, et al.,

                                   Defendants.

---

## REPORT, RECOMMENDATION, AND ORDER

Plaintiff, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 alleging that while he was incarcerated at the Elmira Correctional Facility ("ECF"), he was assaulted by corrections officers and thereafter denied proper medical treatment for his injuries. Dkt. #33, ¶¶ 30-35, 52-62. This case was referred to the undersigned by the Hon. Elizabeth A. Wolford, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Dkt. #67. Currently before the Court is defendant Amy Sechrist's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Dkt. #41.[1] For the reasons set forth below, it is RECOMMENDED that defendant's motion be GRANTED.

---

[1] This motion to dismiss was filed by Amy Sechrist and Brenda Zelko, who were sued as "Jane Does" in the Amended Complaint. Dkt. #33. After filing the Amended Complaint, plaintiff affirmatively identified Sechrist and Zelko as his "Jane Does" and agreed to terminate Zelko as a party to the action. Dkt. #47; Minute Entry, 3/25/2016. Accordingly, the motion to dismiss (Dkt. #41) was granted as to Zelko by Text Order entered on March 25, 2016. Dkt. # 47.

## BACKGROUND

The following facts relevant to defendant Sechrist's motion to dismiss are taken from the Amended Complaint. Dkt. #33. Plaintiff was taken into custody at ECF on August 9, 2011. Dkt. #33, ¶ 29. The corrections officers ("C.O.") at ECF erroneously believed that plaintiff was a sex offender, when, in fact, he was serving a sentence for conspiracy to commit murder. Dkt. #33, ¶¶ 47-48. That evening, after lights out, C.O. McGrain threw cold water on plaintiff and his personal belongings and threatened to "pummel" plaintiff if he came to "chow" the next morning. Dkt. #33, ¶ 30. The following morning, when plaintiff left his cell for "mandatory chow," C.O. McGrain pulled him out of line, slapped him repeatedly, and slammed him against the wall, at which point McGrain and two other C.O.s threw plaintiff to the concrete floor, kicked, slapped, and verbally abused him. Dkt. #33, ¶¶ 31-34. This assault resulted in a large gash just below plaintiff's right knee, which bled and saturated plaintiff's pant leg. Dkt. #33, ¶ 35.

Several hours later, plaintiff was escorted to the infirmary. Dkt. #33, ¶¶ 37-42. Plaintiff was threatened that he would not get medical attention unless he agreed to "lie" that he was injured by falling in his cell. Dkt. #33, ¶¶ 40-42. The C.O. escorting plaintiff told this "story" to C.O. Sechrist, who was assigned to the infirmary. Dkt. #33, ¶ 42. When plaintiff told an inmate porter that he had in fact been assaulted by C.O.s, C.O. Sechrist told plaintiff to "watch his mouth" and that, "comments like that can get you hurt or killed around here." Dkt. #33, ¶ 43.

After plaintiff's cut was cleaned and bandaged in the infirmary, C.O. Sechrist and another C.O. escorted plaintiff to a holding area to await transport to an outside hospital. Dkt. #33, ¶ 49, 53. Sechrist advised the other C.O. that plaintiff had told an inmate that he had been assaulted by C.O.s, and stated to plaintiff, "You must not want to get out of here alive, keep your mouth shut." Dkt. #33, ¶ 53. Plaintiff was never transported to an outside hospital, but placed in a holding cell, and then taken back to the infirmary for the night. Dkt. #33, ¶¶ 54, 55. The following day, September 1, 2011, Dr. Brasalmann, the ECF doctor, reported plaintiff's alleged assault, put eleven staples in plaintiff's right knee, and gave plaintiff a knee brace to keep it immobilized. Dkt. #33, ¶¶ 57, 61. Plaintiff was kept in the infirmary "for protective custody and to allow injury time to heal before returning to the population." Dkt. #33, ¶ 62.

Once in the infirmary, plaintiff asked C.O. Sechrist for a grievance form which she refused to provide. Dkt. #33, ¶ 63. Plaintiff wrote out his complaint on lined paper and gave it to C.O. Sechrist on her next round. Dkt. #33, ¶ 63. The following morning, September 2, 2011, a correction sergeant advised plaintiff that, "the matter has been resolved with the officers, you don't have to worry about any more problems." Dkt. #33, ¶ 66. That afternoon, C.O. Sechrist returned plaintiff's grievance, which was signed by her and stated, "Your complaint was unfounded on the grounds there is no proof." Dkt. #33, ¶ 67. Plaintiff wrote on the grievance form that he did not accept the finding, signed and returned it to C.O. Sechrist and asked her "to send the grievance on to the next level." Dkt. #33, ¶ 67. Plaintiff never saw the grievance again. Dkt. #33, ¶ 67.

On September 7, 2011, Plaintiff's knee swelled up and he was placed on an antibiotic the following day.  Dkt. #33, ¶¶ 72-73.  Approximately one month later, after some events not involving C.O. Sechrist, plaintiff was transferred to Clinton Correctional Facility.  Dkt. #33, ¶¶ 77-78.

## DISCUSSION AND ANALYSIS

**Dismissal Standard**

To survive a motion to dismiss, a plaintiff must allege sufficient facts which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.,* 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*., 556 U.S. at 678; *see also Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied,* 410 U.S. 944 (1973) (holding that legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness).

**42 U.S.C. § 1983**

Plaintiff brings his Amended Complaint under 42 U.S.C. § 1983, which provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (internal citations omitted). To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *Id.* Here, plaintiff alleges that defendant Sechrist threatened him in retaliation for complaining that he was assaulted by C.O.s and prevented him from filing a grievance.

**First Amendment Retaliation**

The First and Fourteenth Amendments protect prison inmates who file grievances from retaliation by prison officials, and such retaliation is actionable under 42 U.S.C. § 1983. *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 236 (S.D.N.Y. 2005). However, because claims of retaliation can be invoked with "relative ease," *Cannon v. Wood*, No. 9:10-CV-01332 (GTS/RFT), 2013 WL 838299, at *4-6 (N.D.N.Y. Jan. 22, 2013), report and recommendation adopted, No. 9:10-CV-1332 (GTS/RFT), 2013 WL 838294, at *3 (N.D.N.Y. Mar. 6, 2013), courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (stating

that "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act"), overruled on other grounds by *Swierkewicz v. Sorema*, 534 U.S. 506 (2002); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To establish a First Amendment retaliation claim, an inmate must show that: (1) he was engaged in constitutionally protected activity; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The plaintiff bears the initial burden to show that a defendant's actions were improperly motivated.

"Adverse action" is retaliatory conduct "that would deter a similarly situated individual of ordinary firmness" from exercising his constitutional rights. *Barrington v. New York*, 806 F. Supp. 2d 730, 745 (S.D.N.Y. 2011) (internal citations omitted). If it would not, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 493. In deciding whether particular conduct constitutes adverse action, courts should bear in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a

[retaliatory] action taken against them is considered adverse." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 433-34 (S.D.N.Y. 2010).

While some verbal threats can constitute adverse action, numerous district courts within the Second Circuit have held that nebulous or vague threats of violence, such as the ones alleged here, are insufficient to establish a First Amendment retaliation claim. *See, e.g., Keitz v. Kickbush*, No. 13-CV-6284 CJS, 2015 WL 1579228, at *3 (W.D.N.Y. Apr. 9, 2015) (holding that a deputy's conduct in screaming at prisoner plaintiff "[I]'m not afraid to fight, in fact . . . I'll kick your . . ." while approaching plaintiff in a menacing manner with fists clenched was insufficient to support a constitutional violation); *Carl v. Griffin*, No. 08 Civ. 4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) (holding that "[d]efendants' alleged 'threats' and/or 'harassment' of Plaintiff were also insufficiently direct or specific to deter an ordinary inmate from exercising his first amendment rights"); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (holding that "verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim") (citing *Cabassa v. Smith*, No. 08 Civ. 480, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009)); *Mateo*, 682 F. Supp. 2d at 432-33, 434 (finding no "adverse action" where corrections officer twice threatened inmate with physical violence for writing grievances, including one incident where the officer entered the inmate's cell, "held his right gloved fist [to the inmate's] face, [and] threatened [him] by saying that one day he and [the inmate-plaintiff] would party").

Even assuming that plaintiff engaged in constitutionally protected activity by complaining to another inmate that C.O.s had beat him up, Sechrist's threats are not sufficiently "adverse" to state a retaliation claim under 42 U.S.C. § 1983.  The "opacity" of Sechrist's alleged threats to plaintiff - "comments like that can get you hurt or killed around here" and "you must not want to get out of here alive" (Dkt. #33, ¶¶ 43, 53) - "softens the deterrent effect considerably" and removes them from the realm of actionable conduct.  *Mateo*, 682 F. Supp. 2d at 434 (reasoning that "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights"); *see also Kemp v. LeClaire*, No. 03-0844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (holding that threats like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" are not adverse actions); *Bartley v. Collins*, 95-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (holding that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (holding that "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance" do not constitute adverse action).  Accordingly, plaintiff's retaliation claim against Sechrist should be dismissed.

**Eighth Amendment**

Sechrist's threats are also not actionable under the Eighth Amendment as harassment or mental abuse. It is well settled that "[a]llegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983." *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that "[t]he claim that a prison guard called [the plaintiff] names also did not allege any appreciable injury and was properly dismissed")); *Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y. 1995) (holding that "[v]erbal assault, standing alone, is not a judicially cognizable injury in a § 1983 civil rights action") (internal citations and quotations omitted); *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995) (holding that "[a]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under [42 U.S.C.] § 1983"). As such, plaintiff's Eighth Amendment claims based on Sechrist's threats are properly dismissed.

**Due Process**

Plaintiff alleges that Sechrist violated his due process rights by refusing to file his grievance. "[C]ourts have consistently held that because grievance procedures are undertaken voluntarily by New York and other states, they are not constitutionally required." *Harris v. Howard*, No. 907-CV-1065 TJM/GJD, 2009 WL 537550, at *14 (N.D.N.Y. Mar. 3, 2009); *Ramos v. Hanslmaier*, No. 96CIV.744 (JSR)(MHD), 1998 WL 101750, at *1 (S.D.N.Y. Mar. 6, 1998); *Bullock v. Horn*, CV-99-1402, 2000 WL

1839171, at *22-23 (M.D.Pa. 2000); *Hoover v. Watson*, 886 F.Supp. 410, 418-19 (D.Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 WL 7789, at *8-9 (S.D.N.Y. Jan. 25, 1988).  Because grievance procedures are not constitutionally required, Sechrist's alleged violation of those procedures does not give rise to a claim under 42 U.S.C. § 1983.

It bears noting that the substance of plaintiff's diverted grievance, the alleged assault on plaintiff by C.O. McGrain and others, is still before this Court and the Eighth Amendment claims against these defendants remain intact.  There is no allegation that Sechrist was herself involved in plaintiff's assault.  Although Sechrist's conduct in failing to forward plaintiff's grievance does not violate plaintiff's constitutional rights, it will certainly bear on whether plaintiff was foreclosed from exhausting his administrative remedies against the other C.O.s, an issue which is not presently before this Court.

## CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that defendant Sechrist's motion to dismiss (Dkt. #41), be **GRANTED**.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72.  Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority."  Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection.

The district judge will ordinarily refuse to consider de novo, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  In accordance with the requirements set forth in Local Rule 72, "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new

legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."


**SO ORDERED**.


DATED:        Buffalo, New York
              April 3, 2017

                                            **S/ H. Kenneth Schroeder, Jr.**
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**