UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JERRY GRAYS,

        Plaintiff,

v.

MR. D. McGRAIN, et al.,

        Defendant.

**DECISION AND ORDER**

1:13-CV-00532 EAW

## BACKGROUND

*Pro se* plaintiff Jerry Grays ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983, on May 17, 2013, claiming that his constitutional rights were violated through an alleged assault and the denial of medical care while he was incarcerated at the Elmira Correctional Facility. (Dkt. 1). Plaintiff filed an amended complaint on January 4, 2016. (Dkt. 33). The case was referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., for disposition of all non-dispositive motions, and to hear and report on dispositive motions for the consideration of this Court pursuant to 28 U.S.C. § 636(b)(1). (*See* Dkt. 67).

On March 27, 2017, defendants Peter Braselman ("Braselman"),[1] Ronald Manwaring ("Manwaring"), Harry McAlinn ("McAlinn"), David McGrain ("McGrain"),

---

[1] The Court notes that Braselman's last name is spelled as "Brasalmann" in the caption of this case. However, for purposes of this Decision and Order, the Court has chosen to rely on Braselman's spelling of his own name, which is found in his supporting declaration. (Dkt. 65-3).

- 1 -

and Amy Sechrist ("Sechrist") (collectively, "Defendants") filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of the claims in Plaintiff's amended complaint. (Dkt. 65). While that motion was pending, this Court adopted the Report and Recommendation of Judge Schroeder (Dkt. 68) recommending the granting of Sechrist's previously-filed motion to dismiss (Dkt. 41), but the Court also granted Plaintiff leave to file an amended complaint to assert a First Amendment retaliation claim (Dkt. 78). Plaintiff filed a second amended complaint on August 10, 2017. (Dkt. 82). On November 16, 2017, Sechrist filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or alternatively for summary judgment pursuant to Fed. R. Civ. P. 56, directed to Plaintiff's second amended complaint. (Dkt. 87). Judge Schroeder issued a Text Order "[i]n the interests of judicial economy and upon defendants' request" construing Defendants' initial motion for summary judgment (Dkt. 65) as directed against the second amended complaint (Dkt. 86).

After briefing of the respective motions before Judge Schroeder, he issued a Report, Recommendation and Order on June 19, 2018 (Dkt. 101), recommending that Sechrist's motion for summary judgment or for judgment on the pleadings (Dkt. 87) be granted, and that the motion for summary judgment filed by Braselman, Manwaring, McAlinn, McGrain, and Sechrist (Dkt. 65) be granted in part and denied in part.

On June 27, 2018, Defendants filed Objections to the Report and Recommendation to the extent it recommended that administrative remedies were unavailable to Plaintiff as a matter of law, and to the extent it recommended denial of the motion concerning the allegations against McGrain as to the events of August 30, 2011—the night before the

alleged use of excessive force. (Dkt. 102). On July 9, 2018, Plaintiff filed Objections to the Report and Recommendation to the extent it recommended granting summary judgment in favor of Braselman. (Dkt. 105). Defendants filed a Reply to Plaintiff's Objections on July 23, 2018 (Dkt. 106), and Plaintiff filed a Reply to Defendants' Objections on the same date (Dkt. 107).

## DISCUSSION

### I. Standard of Review

A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection." L.R. Civ. P. 72(b); *see, e.g.*, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). In the absence of a specific objection, the district court reviews for clear error or manifest injustice. *Singh v. N.Y. State Dep't of Taxation & Fin.*, 865 F. Supp. 2d 344, 348 (W.D.N.Y. 2011). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. **Defendants' Objections**

### A. **Exhaustion of Remedies with Respect to Assault**

Defendants contend that the Report and Recommendation, in effect, recommended granting summary judgment in favor of Plaintiff on the issue of whether he exhausted his administrative remedies, even though Plaintiff did not move for summary judgment on that issue. (Dkt. 102 at 3-5). In support of their argument, Defendants rely on the portion of the Report and Recommendation discussing the grievance given by Plaintiff to Sechrist about the alleged assault:

> For the foregoing reasons, this Court finds that the DOCCS' grievance procedures that were technically available to plaintiff at ERC were 'so opaque and confusing' that they were, 'practically speaking, incapable of use.' *Ross*, 136 S.Ct. at 1859; *Williams*, 829 F.3d at 126. And that, in giving his grievance alleging his assault to CO Sechrist, plaintiff exhausted all administrative remedies that were available to him. 42 U.S.C. § 1997e(a).

(Dkt. 101 at 14). Plaintiff replies that he is not trained in the law, and that based on the facts and case law he cites, the administrative remedies were, in fact, not available to him. (Dkt. 107 at 2-3).

The language cited from the Report and Recommendation by Defendants, when viewed in isolation, could be interpreted as concluding as a matter of law that the affirmative defense of failure to exhaust administrative remedies with respect to the assault will not be available to Defendants at the time of trial. However, this Court does not view the Report and Recommendation as reaching that conclusion. Indeed, before coming to the conclusion cited above, the Report and Recommendation states that "the question remains" whether the grievance process was "available" to Plaintiff, and "[d]rawing all

reasonable inferences in plaintiff's favor . . . I find that CO Sechrist never filed plaintiff's grievance." (Dkt. 101 at 12-13). If, in fact, Sechrist never filed Plaintiff's grievance, then as indicated by the Report and Recommendation, and consistent with the Second Circuit's holding in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016), "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it" and its "obscurity was compounded" by Plaintiff's transfer within weeks after unsuccessfully attempting to file a grievance. *Id.* at 126. However, factual issues remain concerning Plaintiff's attempt to file a grievance concerning the assault that will need to be resolved by the trier of fact. Thus, Defendants' affirmative defense of failure to exhaust remains available, but the jury will be instructed in accordance with Second Circuit case law on this issue. Accordingly, Defendants' Objections in this regard are overruled.

B.   **Actions Alleged Against McGrain**

Defendants also object to the Report and Recommendation to the extent it rejected the argument that the allegations against McGrain, that he threw water on Plaintiff and left him in damp clothing overnight in a cold cell the night before the alleged assault, were a *de minimis* use of force. (Dkt. 102 at 5-8). While acknowledging that McGrain is also alleged to have been present during the assault the following day (*id.* at 6), Defendants attempt to treat Plaintiff's allegations as two separate claims against McGrain, and seek dismissal of any allegations based upon his purported actions the day before the alleged assault.

Defendants misconstrue the Report and Recommendation and Plaintiff's claim. As aptly put by Plaintiff in his Reply to Defendants' Objections, McGrain's actions must be viewed "as a whole" and the alleged assault on August 31 cannot be appropriately understood without considering McGrain's alleged threats and actions the evening before the assault. (Dkt. 107 at 4). The Report and Recommendation did not recognize an entirely separate cause of action based upon McGrain's activity the evening prior to the assault, but rather appropriately viewed the allegations as a continuum of alleged activity by McGrain, ultimately resulting in significant injuries to Plaintiff. (Dkt. 101 at 20). Thus, Defendants' Objections are overruled.

### III. <u>Plaintiff's Objections</u>

Plaintiff objects to the conclusion in the Report and Recommendation that Plaintiff failed to exhaust his administrative remedies against DOCCS physician Braselman. (Dkt. 105). The Report and Recommendation concluded that it was undisputed that Plaintiff failed to file a grievance against Braselman because he believed a claim against Braselman was non-grievable, when in fact it was. (Dkt. 101 at 14).

In his Objections, Plaintiff attempts to offer various explanations as to why he failed to file a grievance against Braselman. (Dkt. 105). However, these were not the explanations provided by Plaintiff at his deposition. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . [F]actual issues created solely

by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." (quotation marks and citation omitted)).

When testifying under oath, Plaintiff stated that he did not file a grievance against Braselman "[b]ecause medical is not a grievable entity." (Dkt. 65-6 at 87). In other words, unlike the failure to file a grievance concerning the assault, at his deposition Plaintiff plainly testified that the reason he failed to file a grievance concerning the medical indifference claim was because of his belief that a grievance could not be filed concerning a medical issue. Indeed, Plaintiff testified that, because of this understanding, he had never filed a medical grievance. (*Id.*). But Plaintiff's understanding was mistaken.

In fact, as recognized in the Report and Recommendation, "only claims against persons or agencies outside of the DOCCS system, such as medical contractors, are excluded from the requirements of the [Inmate Grievance Program]." (Dkt. 101 at 14). As set forth in Defendants' Reply to Plaintiff's Objections (Dkt. 106 at 3-4), Plaintiff cannot now attempt to alter his deposition testimony and contend that, in fact, he attempted to file a grievance concerning Braselman but was unable to do so, *see Flaherty v. Filardi*, No. 03 CIV. 2167(LTS)(HBP), 2007 WL 2734633, at *7 (S.D.N.Y. Sept. 19, 2007) ("To the extent Plaintiff's affirmations conflict with her prior deposition testimony, they will be disregarded."). Thus, the Court agrees with the conclusion in the Report and Recommendation that the undisputed facts establish that Plaintiff failed to file a grievance against Braselman because of his mistaken belief that his claim was non-grievable.[2]

---

[2] Plaintiff makes no claim that his mistaken understanding was the result of any conduct on the part of Defendants.

Alternatively, while not addressed by the Report and Recommendation, even if the Court excused Plaintiff's failure to exhaust his administrative remedies as they relate to Braselman, Plaintiff has failed to raise a genuine issue of material fact as to Braselman's alleged deliberate indifference to a serious medical need.

### A. Legal Standard

The Eighth Amendment protects incarcerated individuals from being subjected to cruel and unusual punishment, which may include prison officials' deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992). The deliberate indifference standard has both an objective and a subjective component. Plaintiff's medical needs must be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Additionally, a plaintiff must establish that prison officials had actual knowledge of his serious medical needs but were deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). To establish indifference of a constitutional magnitude, a plaintiff must prove that "the defendants had a culpable state of mind and intended wantonly to inflict pain."

*Frank v. County of Ontario*, 884 F. Supp. 2d 11, 18 (W.D.N.Y. 2012). An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

### B. The Objective Component: A Serious Medical Condition

Defendants argue that Plaintiff's injury does not satisfy the objective component of the deliberate indifference framework. Specifically, Defendants argue that "[a] laceration, even one as large as the plaintiff's, does not meet this standard." (Dkt. 106 at 7). The Court disagrees, concluding that there is at least an issue of fact concerning the objective component of any medical indifference claim.

"Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries . . . are not sufficiently serious to support a deliberate indifference claim." *Goodwin v. Kennedy*, No. CV 13-1774 (SJF) (AKT), 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) (quotation marks omitted) (collecting cases); *see Dawes v. Coughlin*, 159 F.3d 1346, 1998 WL 513944 (Table), at *1 (2d Cir. 1998) ("[E]ven taking [the plaintiff's] testimony as true, a reasonable finder of fact could not conclude that [his] claimed injury, a one-and-a-half-inch laceration on his elbow, was sufficiently serious to give rise to an Eighth Amendment claim."); *Sloane v. Borawski*, 64 F. Supp. 3d 473, 494

(W.D.N.Y. 2014) (finding that a two-and-a-half inch laceration to the top of the plaintiff's head and a one-half inch laceration to his left eyebrow did not, "as a matter of law, rise to the level of a 'serious medical condition' warranting Eighth Amendment protection"); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) ("Crediting [the p]laintiff's version of his injuries, the evidence shows that he suffered two black eyes, bruising in his kidney area on his left side, kick marks and open lacerations on his knees, bruising and red spots on his thigh, lacerations on his arms and wrists, a headache, and numbness in his hands and fingers. None of these are conditions of urgency that may produce death, degeneration, or extreme pain."); *see also Hawthorne v. Nurse Sturgeon*, No. 9:17-CV-438 (LEK/CFH), 2018 WL 4290458, at *3 (N.D.N.Y. Aug. 8, 2018) ("A 'sufficiently serious' medical need is 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" (quoting *Hathaway*, 37 F.3d at 66)), *report and recommendation adopted sub nom. Hawthorne v. Sturgeon*, No. 9:17-CV-0438 (LEK/CFH), 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018).

Plaintiff suffered a "large fairly deep" gash in his leg that was three by one-and-a-half inches in size. (Dkt. 65-3 at ¶ 5). Unlike the cases cited above, Plaintiff's injury was not a simple abrasion or a superficial cut. *Cf. Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991) (finding that the plaintiff failed to raise a genuine issue of material fact as to whether he suffered from a "serious medical need" where he suffered a cut along his temple that "was neither long enough nor deep enough to have been stitched shut"); *Ford v. Phillips*, No. 05 CIV. 6646 (NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("Abrasions, a minor bruise, slight bleeding and scratches are not injuries that may produce death,

degeneration or extreme pain, and no reasonable jury could find to the contrary."); *Benitez v. Straley*, No. 01CIV.0181(RCC)(RLE), 2006 WL 5400078, at \*12 (S.D.N.Y. Feb. 16, 2006) (finding that the objective component was not satisfied where the plaintiff suffered from various cuts to his head and wrists, none of which required stitches). Rather, Plaintiff's wound required 11 staples to close. (Dkt. 65-3 at ¶ 7); *see Warren v. Goord*, 579 F. Supp. 2d 488, 491 (S.D.N.Y. 2008) (finding the objective component to be satisfied where the "wound was approximately three inches in length and required twelve stitches to close"), *aff'd*, 368 F. App'x 161 (2d Cir. 2010); *King v. Dep't of Corr.*, No. 95 CIV. 3057 (JGK), 1998 WL 67669, at \*1 (S.D.N.Y. Feb. 18, 1998) ("With respect to the first part of the Eighth Amendment test, the injury sustained by the plaintiff, a cut to his face, neck, and shoulder requiring 12-13 stitches, and the manner in which he received the injury, are sufficient to satisfy the objective requirement of the Eighth Amendment claim."); *see generally Scarbrough v. Thompson*, No. 10-CV-901 TJM/CFH, 2012 WL 7761439, at \*8 (N.D.N.Y. Dec. 12, 2012) (stating that "a cut above [the plaintiff's] left eyebrow requiring twenty-five stitches . . . can be fairly classified as a serious medical need"), *report and recommendation adopted*, No. 9:10-CV-901, 2013 WL 1100680 (N.D.N.Y. Mar. 15, 2013). Furthermore, according to Plaintiff, the laceration to his knee was "bleeding profusely." (Dkt. 83 at 7); *cf. Montavon v. Town of Southington*, No. 3-95-CV-1141(WWE), 1997 WL 835053, at \*4 (D. Conn. Sept. 29, 1997) ("Since there is no indication in the record that plaintiff's bleeding was profuse or that he was experiencing any other conditions, his cuts and scrapes, by themselves, do not constitute serious medical needs.").

Thus, the Court concludes that there are disputed issues of material fact concerning the objective component of Plaintiff's medical indifference claim. However, the same cannot be said for the subjective component.

### C. The Subjective Component: Deliberate Indifference

"Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "A prison official acts with a sufficiently culpable state of mind when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hawthorne*, 2018 WL 4290458, at *3 (quoting *Farmer*, 511 U.S. at 837).

The record evidence demonstrates that Plaintiff was initially examined by Registered Nurse Kathy Talada at 5:00 p.m. on August 31, 2011, at which time she cleaned his wound with antiseptic soap, applied bacitracin, and then wrapped his knee in gauze. (Dkt. 65-3 at ¶ 5; Dkt. 65-6 at 38-40 (Plaintiff testifying that Nurse Talada cleaned his knee and bandaged his wound, and then provided him with "some ibuprofen or Tylenol or something"), 74 (Plaintiff testifying that Nurse Talada cleaned his knee and "put a bandage on it to keep it protected")). As such, the parties do not dispute that Plaintiff was provided with initial medical treatment and care as well as pain medication.

In his verified opposition to Defendants' motion for summary judgment, Plaintiff appears to dispute the propriety of Braselman's decision to cancel Plaintiff's transfer from the infirmary to an outside hospital. (Dkt. 83 at 15). However, "a prisoner has no right to

the treatment of his choice." *Johnson v. Newport Lorillard*, No. 01 CIV. 9587 (SAS), 2003 WL 169797, at *3 (S.D.N.Y. Jan. 23, 2003); *see Polletta v. Farinella*, No. 3:11CV660 (JBA), 2012 WL 6115101, at *2 (D. Conn. Dec. 10, 2012) ("That Plaintiff did not receive the treatment of his choice, i.e., being taken to an outside hospital, is insufficient to state a claim for deliberate indifference."). Thus, to the extent Plaintiff bases his deliberate indifference claim upon this decision—which was made only after Nurse Talada conferred with Braselman regarding Plaintiff's injury (*see* Dkt. 65-3 at ¶ 5; Dkt. 65-6 at 76)—Plaintiff's contention fails to raise a genuine issue of material fact, *see Brown v. Montone*, No. 17-CV-4618 (KMK), 2018 WL 2976023, at *6 (S.D.N.Y. June 13, 2018) ("[T]hat Dr. Choundry 'did not[ ] . . . get [Plaintiff] to an outside hospital for surgery[]' is not a basis for an Eighth Amendment claim." (citation omitted)); *Whitley v. Bowden*, No. 17-CV-3564 (KMK), 2018 WL 2170313, at *10 n.15 (S.D.N.Y. May 10, 2018) ("[T]o the extent that Plaintiff would have 'prefer[red] a different treatment,' such as referring him to an outside hospital or calling poison control, these claims 'do[ ] not give rise to an Eighth Amendment violation.'" (quoting *Chance*, 143 F.3d at 703)); *Rodriguez v. Westchester Cty. Jail Corr. Dep't*, No. 98 CIV. 2743(RPP), 2003 WL 1907963, at *6 (S.D.N.Y. Apr. 17, 2003) (noting that while the plaintiff claims that the defendant "should have referred him to an 'outside hospital' for adequate treatment," the plaintiff failed to demonstrate that any "failure to make such a referral . . . constituted 'obduracy and wantonness in placing [the plaintiff]'s health in danger'" (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 72-73 (2d Cir. 1998))); *Nelson v. Rodas*, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (finding the plaintiff's contention that prison officials refused his request to

consult with an outside physician constituted "no more than a disagreement about the proper course of treatment that cannot form the basis of an Eighth Amendment claim"); *see generally Todaro v. Ward*, 565 F.2d 48, 53 & n.5 (2d Cir. 1977) (affirming the district court's rejection of the plaintiff's deliberate indifference claim based on "access to outside specialists and elective surgery").

Plaintiff also challenges Braselman's decision to hold him in the infirmary overnight, delaying the procedure to staple his knee for the following day. (Dkt. 83 at 12; *see* Dkt. 101 at 2-3). Plaintiff claims that he was required to wait about 20 hours before he was examined by Braselman and his injury was finally stapled and closed. (*See* Dkt. 83 at 14-15). The Court notes that Plaintiff had already received medical attention from Nurse Talada before Plaintiff was examined by Braselman. (*See* Dkt. 65-3 at ¶ 5; Dkt. 65-6 at 38-40, 74). "The mere fact that an inmate feels that he did not receive adequate attention, or would have preferred some other form of treatment, does not constitute deliberate indifference." *Crique v. Magill*, No. 12 Civ. 3345 (PAC) (GWG), 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013). Nevertheless, "delays in providing necessary medical care may in some cases demonstrate deliberate indifference . . . ." *Id.* However, the Second Circuit "has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Feliciano v. Anderson*, No. 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *11 (S.D.N.Y. Mar. 30, 2017) (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142 (Table), *2 (2d Cir. 1999)).

Although Plaintiff's injury was not insignificant, the evidence before the Court establishes that Braselman's decision to delay the insertion of medical staples until the following day was informed by Nurse Talada and the treatment she had already applied to Plaintiff's laceration. (*See* Dkt. 65-3 at ¶ 5; Dkt. 65-6 at 76). While Plaintiff may have wished that his knee had been stapled sooner, "disagreements over treatment do not rise to the level of a Constitutional violation." *Graham v. Gibson*, No. 04-CV-6088-CJS-MWP, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) (citing *Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.")); *see Concepcion v. Pickles*, No. 9:08-CV-1278 FJS/ATB, 2010 WL 3909477, at *2 (N.D.N.Y. Sept. 30, 2010) ("Although Plaintiff may have disagreed with this course of treatment—and would have preferred to receive his medication sooner—this disagreement does not rise to the level of a constitutional violation where, as here, there is nothing in the record to indicate that the treatment that Plaintiff received was inadequate."), *aff'd*, 450 F. App'x 72 (2d Cir. 2011); *Cipriani v. Schenectady County*, No. 9:06-CV-0889(GTSDRH), 2009 WL 3111681, at *16 (N.D.N.Y. Sept. 24, 2009) (holding that "there can be no question that defendants delayed or showed indifference to [the plaintiff]'s complaint," and stating that "[t]o the extent that [the plaintiff] contends that additional or quicker action should have been completed, it creates only a difference of opinion as to treatment and fails to establish a constitutional claim"); *Breer v. Gold*, No. 2:03-CV-326, 2008 WL 4093008, at *6 (D. Vt. Aug. 28, 2008) (stating that while the plaintiff "insists that surgery should have been performed earlier, . . . [m]ere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred,

does not suffice for an Eighth Amendment claim"); *Wandell v. Koenigsmann*, No. 99 CIV. 8652 WHP, 2000 WL 1036030, at *4 (S.D.N.Y. July 27, 2000) ("The fact that plaintiff believes he should have been prescribed crutches earlier, i.e. immediately, may state a claim for medical malpractice, but does not rise to the level of a constitutional violation.").

Plaintiff insists that he experienced increased pain as a result of Braselman's delayed care, but he has failed to set forth evidence demonstrating that "his conditions were life-threatening and fast-degenerating, or that they worsened because of the delay, or that the delay was punitive." *Feliciano*, 2017 WL 1189747, at *11. Furthermore, the Second Circuit has stated that even where a plaintiff arguably suffers from "serious underlying conditions," no reasonable jury could find in favor of the plaintiff on a medical indifference claim where the evidence "demonstrates a temporary delay or interruption in the provision of otherwise adequate medical treatment for those ailments lasting only a few hours." *Bilal v. White*, 494 F. App'x 143, 145 (2d Cir. 2012) (affirming the district court's grant of summary judgment).

As noted in the Report and Recommendation, Plaintiff was allegedly injured on the morning of August 31, 2011, and was ordered by McGrain to return to his prison cell. (Dkt. 101 at 3; *see* Dkt. 65-2 at ¶¶ 15-18; Dkt. 82 at ¶ 36). Plaintiff was permitted to seek treatment at the infirmary, presumably several hours later, sometime after 3:00 p.m. (Dkt. 101 at 3; *see* Dkt. 65-2 at ¶ 19; Dkt. 82 at ¶¶ 39-40), and was examined by Nurse Talada at about 5:00 p.m. (Dkt. 65-2 at ¶ 20; Dkt. 65-3 at ¶ 5; Dkt. 82 at ¶ 44). At that point in time, Nurse Talada cleaned, treated, and bandaged Plaintiff's wound, and she provided him with pain medication. (*See* Dkt. 65-3 at ¶ 5; Dkt. 65-6 at 38-40, 74). Plaintiff was then examined

by Braselman at about 2:00 p.m. the next day. (Dkt. 65-2 at ¶ 37; Dkt. 65-3 at ¶¶ 7-8; Dkt. 82 at ¶ 57). Considering Nurse Talada's initial treatment and care, and the fact that Braselman's examination took place by mid-afternoon the following day, the Court concludes that Plaintiff's wound was addressed with "sufficient speed" for constitutional purposes. *Wandell*, 2000 WL 1036030, at *4 (finding that the "defendants attended to [the plaintiff] with 'sufficient speed'" where the plaintiff alleged that "he received medical attention from a nurse within half-an-hour of his injury, he was examined by a physician assistant in the prison hospital within six hours, and he received medical attention from a doctor at the prison hospital and a doctor at Saint Agnes Hospital within 24 hours of his injury" (citation omitted)); *see McNulty v. Yaneka*, No. 11-CV-08320 (ER), 2013 WL 684448, at *8 (S.D.N.Y. Feb. 25, 2013) (finding that the defendant's "determination that Plaintiff did not require medical attention in light of his recent examination by [a registered nurse] and ongoing treatment does not rise to the level of criminal recklessness," but, "[a]t most," constituted "mere negligence or malpractice, and therefore cannot form the basis of an Eighth Amendment violation"); *Simmons v. Artuz*, No. 94 CIV. 6777 (DLC), 1996 WL 233504, at *4 (S.D.N.Y. May 8, 1996) (finding that the "plaintiff's medical needs were addressed with sufficient speed" where he was injured in the morning hours and was treated by the evening-duty nurse).

Finally, in an apparent attempt to demonstrate that Braselman's delay worsened his condition, Plaintiff claims that he suffered from an "infection that developed after [his] release from the infirmary," and that "an infection destroys muscle and other body tissue and could have deteriated [sic] to the point of resulting in an amputation or, at minimum[,]

- 17 -

the lower portion of [his] right leg." (Dkt. 83 at 15-16). However, Plaintiff's speculative assertions describing what a contagion *could have* done are insufficient to raise a triable issue of fact. *See Arnow v. Aeroflot Russian Airlines*, 980 F. Supp. 2d 477, 482 (S.D.N.Y. 2013) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and to defeat a motion for summary judgment." (citing *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996))).

Plaintiff testified that Braselman had noted that his knee could potentially become infected, but Plaintiff also testified that Braselman treated the wound, inserted 11 staples to close the laceration, wrapped the injury, and then provided Plaintiff with "a knee brace sleeve to keep [his] knee from moving much." (Dkt. 65-6 at 77). Braselman averred that he scheduled regular medical monitoring, beginning on September 1, 2011, and that "[n]o signs of infections were noted" before Plaintiff was discharged to his prison cell on September 6th. (Dkt. 65-3 at 3-5).

Consistent with Braselman's averments, Plaintiff testified that Nurse Talada reexamined his injury several times during his monitoring period to redress his wound and to ensure that the laceration was healing and was not infected. (Dkt. 65-6 at 79-80). After Plaintiff was released to his prison cell, his leg began to swell, and he returned to the infirmary a couple days later where he was diagnosed with an infection. (*Id.* at 52, 81). The infection never showed signs of any odor or any discharge of puss. (*Id.* at 82). Plaintiff testified that Braselman wrote a prescription for Keflex, an antibiotic, which resolved the infection. (*Id.* at 53, 83-84).

Instead of noting any signs of infection that were evident during his medical monitoring period, Plaintiff's own testimony confirms that Braselman took the risk of infection seriously as he undertook various actions to prevent the onset of further medical complications. Indeed, Plaintiff points to no medical evidence in the record demonstrating that Braselman was indifferent to any risk of infection while Plaintiff was housed in the infirmary. *See Miller v. Ramineni*, No. 9:14-CV-1351 (DNH/CFH), 2016 WL 1253684, at *10 (N.D.N.Y. Feb. 29, 2016) ("[T]he fact that [the plaintiff] was diagnosed with MRSA and isolated on April 13, three days after leaving Mid-State for admission at St. Elizabeth's[,] does not demonstrate that the one-day delay or interruption in treatment allegedly caused by John Does # 11-13 constitutes deliberate indifference."), *report and recommendation adopted*, No. 9:14-CV-1351 (DNH/CFH), 2016 WL 1261125 (N.D.N.Y. Mar. 30, 2016).

Furthermore, there is no evidence that Braselman actually became aware of any symptoms associated with an infection to Plaintiff's leg. It was only after Plaintiff was discharged to his prison cell that any signs of infection began to manifest themselves. Shortly thereafter, Plaintiff returned to the infirmary where Braselman prescribed an antibiotic that effectively cured the infection. *See generally Hines v. Gandham*, No. CIVA908CV553 GLS/DRH, 2009 WL 537541, at *8 (N.D.N.Y. Mar. 3, 2009) (noting that even if the plaintiff received negligent medical treatment or misdiagnosis, "his allegations are insufficient to demonstrate deliberate indifference since each time [the plaintiff] saw [the defendant], he was evaluated and treated, with surgery or prescriptions"); *Cipriani*, 2009 WL 3111681, at *16 (finding no deliberate indifference where a lump on the

plaintiff's chest "was not infected" and was not "an immediate danger" upon medical evaluation, and where the plaintiff was "immediately referred to a surgeon for excision" upon the plaintiff's subsequent "contentions that the lump was growing").

Under these facts, no reasonable jury could find that Braselman displayed "subjective recklessness[] as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280. Therefore, even assuming that Plaintiff is excused from his failure to exhaust his administrative remedies, Plaintiff's claim for deliberate indifference to a serious medical need against Braselman fails on the merits. Therefore, Plaintiff's Objections are overruled.

## CONCLUSION

The Court has conducted a careful review of the conclusions reached by the Report and Recommendation, including those for which objections were filed by the parties, and for the foregoing reasons, as well as the reasons set forth in further detail in the Report and Recommendation, the Court adopts the Report and Recommendation in its entirety. As a result, Sechrist's motion for summary judgment or for judgment on the pleadings (Dkt. 87) is granted, and Defendants' motion for summary judgment (Dkt. 65) is granted in part and denied in part. Accordingly, the Clerk of Court is directed to terminate Sechrist and Braselman from this action.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 20, 2018
Rochester, New York