UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



___

JERRY D. GRAYS,

        Plaintiff,

v.

MR. D. MCGRAIN, ET AL.,

        Defendants.

**DECISION AND ORDER**

1:13-CV-00532 EAW

## INTRODUCTION

*Pro se* plaintiff Jerry Grays ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983, on May 17, 2013, claiming that his constitutional rights were violated as a result of, among other things, an alleged assault and the denial of medical care while he was incarcerated at the Elmira Correctional Facility. (Dkt. 1). After several years of discovery and motion practice, Plaintiff's § 1983 claims against corrections officers David McGrain ("C.O. McGrain"), Ronald Manwaring ("C.O. Manwaring"), and Harry McAlinn ("C.O. McAlinn") (collectively, "Defendants") for the violation of Plaintiff's Eighth Amendment rights have survived and are ready for trial. (*See* Dkt. 82 (Plaintiff's operative Complaint)).

On December 10, 2018, the Court held a status conference at which both sides agreed that the matter was ready for trial. (Dkt. 111). The Court informed Plaintiff that he could request the appointment of counsel for trial and advised Plaintiff to file a motion seeking such relief if he believed it was in his best interests. The Court then set a further status conference for March 27, 2019. (*Id.*; Dkt. 112).

On January 4, 2019, Plaintiff filed a motion to appoint counsel. (Dkt. 113). In support of his motion, Plaintiff submitted a sworn affidavit indicating his ignorance of the practice of law. (*Id.* at ¶¶ 3-4). Plaintiff also states that he will remain incarcerated for at least another 24 months before he may seek parole status, and thus, he will have difficulty locating and contacting potential witnesses for trial. (*Id.* at ¶ 5). Furthermore, Plaintiff argues that his case involves complex factual questions pertaining to the issue of administrative exhaustion that only a trained attorney could effectively present to the jury. (*See id.* at ¶¶ 4, 6).

For the following reasons, Plaintiff's motion is granted.

## **DISCUSSION**

"Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel." *Foggie ex rel. Geronimo v. Comm'r of Soc. Sec.*, 243 F. Supp. 2d 2, 4 (S.D.N.Y. 2003). Nonetheless, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants when the circumstances so warrant. *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23-24 (2d Cir. 1988). The assignment of *pro bono* counsel in civil cases falls within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).

Accordingly, "[i]n evaluating a *pro se* litigant's request for appointment of counsel the Second Circuit require[s] the court to consider first whether the indigent's position appears likely to be one of substance. . . ." *Davidson v. Goord*, 259 F. Supp. 2d 236, 237

(W.D.N.Y. 2002) (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)).

> Only after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute.

*Carmona*, 243 F.3d at 632 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). Additionally, for prison inmates, the court should also give weight to the plaintiff's lack of practical access to attorneys. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989). All of these factors should be considered both non-dispositive and non-exclusive; "[e]ach case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

Plaintiff was in prison at the time he filed his initial Complaint, and he currently remains in state custody at the Greene Correctional Facility. Plaintiff has also been granted leave to proceed *in forma pauperis*. (Dkt. 2). In his *in forma pauperis* application, Plaintiff indicated that he was incarcerated, had not worked within the past 12 months, and his gross monthly income was about $37.00. (*Id.* at 1-2). A prison official certified that Plaintiff held $5.38 on account to his credit at the Clinton Correctional Facility at the time he filed his motion. (*Id.* at 4). As a result, Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

The Court also finds that Plaintiff's claims are likely of substance. Plaintiff's remaining claims against the remaining Defendants revolve around an alleged assault and the alleged indifference shown for his resulting injuries. Specifically, Plaintiff alleges that

on August 30, 2011, while incarcerated as an inmate at the Elmira Correctional Facility, C.O. McGrain threw gallons of cold water into his prison cell and then threatened to beat Plaintiff if he went to breakfast in the morning. (Dkt. 82 at ¶ 30). When Plaintiff arrived for "mandatory chow" sometime around 6:30 or 7:00 a.m. the next day, C.O. McGrain and C.O. Manwaring proceeded to violently assault Plaintiff. (*Id.* at 6-7). C.O. McAlinn was present during the alleged beating, but only "stood by and watched." (*Id.* at ¶ 32). The alleged assault resulted in a large gash along Plaintiff's right knee, which was bleeding profusely. (*See id.* at ¶¶ 35-36). Despite observing Plaintiff's injury, Defendants "ordered" Plaintiff to return to his cell. (*Id.* at ¶ 36). At approximately 8:15 a.m., Plaintiff informed C.O. McAlinn that he needed medical assistance, but C.O. McAlinn said to Plaintiff that "he was not going to receive any medical attention." (*Id.* at ¶ 37). Plaintiff was permitted to seek treatment at the infirmary several hours later—sometime after 3:00 p.m. (*See id.* at ¶¶ 38-40).

The foregoing demonstrates that Plaintiff's allegations of excessive force, the failure to protect/intervene, and deliberate indifference to a serious medical need "satisfy the initial threshold showing of merit." *Fields v. McNaughton*, No. 15-CV-6298-FPG-JWF, 2018 WL 4608201, at *1 (W.D.N.Y. Sept. 25, 2018); *see, e.g.*, *Espey v. Rice*, No. 16-CV-6421-CJS-JWF, 2018 WL 791401, at *1 (W.D.N.Y. Feb. 7, 2018) (finding that the plaintiff's "allegations satisfy the initial threshold showing of merit" where the plaintiff alleged that employees at the Orleans Correctional Facility "violated his civil rights by using excessive force"); *Wilson v. Hendel*, No. 00-CV-6458-CJS(F), 2011 WL 4703117, at *2 (W.D.N.Y.

Oct. 4, 2011) (finding that the plaintiff's allegations were likely of substance where "[t]he allegations in the complaint, if true, could adequately prove a prima facie case of excessive force"); *Allen v. Sakellardis*, No. 02 CIV.4373(JSR)(DF), 2003 WL 22232902, at *2 (S.D.N.Y. Sept. 29, 2003) (finding allegations that the plaintiff had been injured "as a result of being 'restrained . . . in [a] "full Nelson" headlock' and having his head 'repeatedly bang[ed] against the wall'" by corrections officers satisfied the threshold showing of merit); *McKenna v. Wright*, No. 01 Civ. 6571, 2003 WL 302225, at *2 (S.D.N.Y. Feb. 11, 2003) (finding the plaintiff's allegations of deliberate indifference to a serious medical need to be "of substance"); *see also Mackey v. DiCaprio*, 312 F. Supp. 2d 580, 582 (S.D.N.Y. 2004) ("The merits of plaintiff's case are viewed by this Court with greater generosity because, as a *pro se* litigant, he may have had difficulty in fully developing his allegations." (citing *Cooper*, 877 F.2d at 174)). Furthermore, the Court finds that appointment of counsel is warranted after balancing the remaining factors.

Plaintiff's status as a prisoner may restrict his ability to engage in effective trial and witness preparation. *See Alli v. Steward-Bowden*, No. 11 Civ. 4952 (PKC) (KNF), 2012 WL 4053693, at *2 (S.D.N.Y. Sept. 11, 2012) (considering the plaintiff's "incarceration and limited access to legal materials" in determining whether appointment of counsel was warranted); *Jermosen v. Danahy*, No. 79 CIV. 4756 (SWK), 1989 WL 49349, at *2 (S.D.N.Y. May 2, 1989) (noting that the "plaintiff needs to gather facts and cannot do so adequately while incarcerated"); *see also Walters v. NYC Health Hosp. Corp.*, No. 02 CIV. 751 (JGKDF), 2002 WL 31681600, at *2 (S.D.N.Y. Nov. 25, 2002) ("A plaintiff will be

found unable to investigate the facts of his or her claim where, for example, he or she will be incarcerated for the duration of the case.").

Additionally, as Plaintiff recognizes, the trial will resolve a pending administrative exhaustion issue. (Dkt. 113 at ¶¶ 4, 6; *see* Dkt. 108 at 4-5). The jury will be asked to determine whether corrections officer Amy Sechrist actually filed Plaintiff's grievance and whether the grievance process was available to Plaintiff. In general, the principles of administrative exhaustion may present some confusion for any layperson. However, the issues underlying the exhaustion question in this matter are further obscured by the fact that Plaintiff was transferred from the Elmira Correctional Facility just weeks after attempting to file his grievance and now remains incarcerated at the Greene Correctional Facility. The complexity of this issue and its importance to Plaintiff's success or failure at trial lends further support for the appointment of counsel. *Cf. Carollo v. Schroder*, No. 04-CV-01803(F), 2005 WL 67099, at *2 (W.D.N.Y. Jan. 10, 2005) ("Carollo's motion for appointment of counsel will be denied without prejudice because the failure to exhaust her administrative remedies is manifest and such would not be changed by the appointment of even the most skilled advocate.").

The Court notes that Plaintiff has not indicated in his motion papers whether he has made any attempts to secure legal representation prior to filing his motion. The Second Circuit, in interpreting § 1915, stated that "the language of the statute itself requires that the indigent be unable to obtain counsel before appointment will even be considered." *Hodge*, 802 F.2d at 61. Several district courts in this Circuit have construed that language

to bar any requests for appointment of counsel if the movant has failed to demonstrate that he has made prior attempts to seek out legal counsel. *See, e.g., Gulley v. Dzurenda*, 686 F. Supp. 2d 173, 174 (D. Conn. 2010); *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, No. 08 CV 3123 (CPS), 2008 WL 11439345, at *2 (E.D.N.Y. Nov. 4, 2008); *Goode v. Munafo*, No. 96Civ.3770(AGS)(MHD), 1998 WL 27121, at *1 (S.D.N.Y. Jan. 26, 1998); *McDonald v. Doe*, 115 F.R.D. 36, 37 (S.D.N.Y. 1987).

While the Second Circuit has indicated that this is a "threshold requirement," it is still "within the discretion of the district court to determine when that threshold requirement has been satisfied." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). Moreover, "the court may take notice of the fact that most indigent incarcerated prisoners do not in fact have the resources, knowledge and experience needed to find counsel willing to represent them without charge. . . ." *Id.*; *see Cooper*, 877 F.2d at 174 ("If the indigent plaintiff is a prison inmate or a homeless vagrant, he may have no effective means of bringing his claim to the attention of the lawyer marketplace to have its merits appraised."). "Thus, while the court may, in some instances, require the pro se to specify what efforts he has made in an attempt to obtain counsel himself," a "detailed showing" need not be presented before the movant is appointed counsel. *McDonald*, 850 F.2d at 124. Considering Plaintiff's incarceration and limited resources to secure legal representation while in state custody, the Court finds that Plaintiff is indeed unable to secure legal counsel on his own.

## CONCLUSION

After carefully balancing the factors set forth in *Hodge* and *Cooper*, the Court concludes that the appointment of counsel is appropriate, and, therefore, Plaintiff's motion (Dkt. 113) is granted. The Court will find counsel willing to accept an appointment to represent Plaintiff and inform the parties in a separate Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 23, 2019
Rochester, New York